IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHALED MALLOUH SHAYE ALGAHTANI, et al. <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, President of the United States, et al., <br><br> Respondents. | Civil Action No. 06-CV-1769 (RCL) |

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE

Respondents hereby oppose Petitioners' Motion for an Order to Show Cause, filed by petitioner Khaled Mallouh Shaye Algahtani ("Algahtani"), his next friend, Shabib Mallouh Shaye Algahtani, and petitioners' counsel (dkt. no. 6), which seeks an order requiring respondents to produce a factual return. The Court lacks jurisdiction over this case because petitioners' habeas petition was not properly filed in this Court, and the Court should not require production of a factual return in any event.

A.  **The Court Should Deny Petitioners' Motion Because Under the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006, the Court Lacks Jurisdiction over the Case.**

This case was initiated by the filing of a petition for a writ of habeas corpus on October 16, 2006. Pet. for Writ of Habeas Corpus, Algahtani v. Bush, No. 06-CV-1769 (RCL) (Algahtani Petition) (dkt. no. 1). The petition purports to be filed on behalf of Algahtani, a detainee at the United States Naval Base at Guantanamo Bay, Cuba, who has been determined to be an enemy

combatant.[1] The petition purports to be filed by Algahtani and his brother as next friend, Algahtani Petition at 2, but is not signed or verified by either petitioner. See Algahtani Petition; 28 U.S.C. § 2242.

The Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (10 U.S.C. § 801 note) ("DTA"), enacted on December 30, 2005, amended the habeas statute, 28 U.S.C. § 2241, to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) a habeas petition filed by an alien detained by DoD at Guantanamo, or (2) "any other action against the United States or its agents relating to any aspect of the detention" of such aliens. See DTA § 1005(e)(1). While the Supreme Court in Hamdan v. Rumsfeld, 548 U.S. __, 126 S. Ct. 2749, 2762-69 (2006), held that this particular aspect of the amendment to the habeas statute did not apply to habeas petitions pending prior to the enactment of the Act, the petition in this case was filed on October 16, 2006, well after enactment of the Act. See DTA § 1005(h)(1) (provision withdrawing court jurisdiction "take[s] effect on the date of enactment" of the DTA). In addition, the Detainee Treatment Act created an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants: section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

On October 17, 2006, the President signed into law the Military Commissions Act

---

[1] Based on the information provided in his petition, respondents have identified petitioner Algahtani as having Internment Serial Number ("ISN") 439.

2

of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"). The MCA, among other things, again amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions "filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," or (2) "any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," except as provided in section 1005(e)(2) and (e)(3) of the DTA.[2] See MCA § 7(a). Further, the new amendment to § 2241 takes effect on the date of enactment and applies specifically "*to all cases, without exception, pending on or after the date of the enactment of this Act* which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001."[3] Id. § 7(b) (emphasis added).

Accordingly, this Court, by the explicit terms of the habeas statute, has lacked jurisdiction over this case since it was filed. Indeed, at the time the case was filed, the DTA provided that

---

[2] As noted above, DTA § 1005(e)(2) provides that the Court of Appeals "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," while DTA § 1005(e)(3), as amended by the MCA, provides that the Court of Appeals "shall have exclusive jurisdiction to determine the validity of any final decision rendered by a military commission," id. § 1005(e)(3).

[3] The Court of Appeals in certain of the pending Guantanamo detainee appeals, Boumediene v. Bush, No. 05-5062 (D.C. Cir.), and Al Odah v. United States, No. 05-5064 (D.C. Cir.), ordered the parties to submit supplemental briefing regarding the significance of the MCA. This briefing was completed on November 20, 2006.

"no court, justice, or judge" had jurisdiction to consider either a habeas petition filed by an alien detained by DoD at Guantanamo or "any other action against the United States or its agents relating to any aspect of the detention" of such an alien. See DTA § 1005(e)(1). Moreover, since then, the habeas statute has been amended again by the MCA to provide that "no court, justice, or judge shall have jurisdiction" to consider either a habeas petition or any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien . . . detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination." MCA § 7(a) (amending 28 U.S.C. § 2241). Thus, both the DTA, when these cases were filed, and the MCA, currently, have provided unambiguously that District Court jurisdiction does not exist over this case.

Thus, District Court jurisdiction over this case has never existed. "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869)). Accordingly, the Court should not proceed to exercise jurisdiction and order the relief requested by petitioners. Entry of such an order, and the concomitant assertion of jurisdiction by this Court, would directly conflict with MCA's clear and unequivocal denial of District Court jurisdiction over this case. It would disrupt the jurisdictional scheme intended and provided by the amended habeas statute and unduly interfere with the exclusive jurisdiction of the Court of Appeals. See Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (holding that when a statute assigns

4

review authority to the Court of Appeals, the Court of Appeals has exclusive jurisdiction to review any suit seeking relief that might affect its future jurisdiction, and the District Court cannot exercise concurrent jurisdiction); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); id. at 78 (noting that concurrent District Court jurisdiction could lead to "duplicative and potentially conflicting review and the delay and expense incidental thereto" (citation omitted)).  Moreover, entry of the requested order would result in substantial prejudice to respondents by imposing sizeable burdens upon respondents respecting the production of a factual return.  Accordingly, petitioners' motion for a factual return should be denied.

**B.    The Court Should Not Order Production of a Factual Return in Any Event.**

Aside from the lack of jurisdiction with respect to petitioners' requested relief, the Court also should not require the production and submission of a factual return in this case because such action involves the disclosure to counsel of classified information, and the preparation of the returns is not an inconsequential task.  As an initial matter, requiring respondents to provide to counsel factual returns containing classified information, even where counsel receive such disclosures subject to certain handling restrictions, is not without prejudice to respondents where the issue of whether the Court has any authority to require such disclosure is in question. Furthermore, with respect to the logistical burdens involved in producing factual returns, each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations, and Executive

Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Because each return can range from dozens to hundreds of pages, depending upon the circumstances, this review and redaction process is a significant and time-consuming undertaking. For these reasons, as well as the outstanding jurisdictional issues, petitioners' motion for production of a factual return should be denied.

Although respondents maintain that a factual return should not be required at all, if the Court decides to assert jurisdiction notwithstanding the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006 and order the production of a factual return in this case, respondents request that in light of the logistical burdens involved, they be given at least 90 days to submit the factual return. The review of information in the return described above, that is, to ensure that any information disclosed to counsel is in accordance with all applicable statutes, regulations and Executive Orders, must be conducted. In light of such factors, if the Court determines that the submission of a factual return is appropriate, the Court should grant respondents at least 90 days to produce the factual return in this case.

Counsel argue that a factual return is necessary because they have scheduled a visit to Guantanamo Bay in January 2007. Even if the Court were to issue a protective order that would permit this visit to take place, the scheduling of a visit with the petitioner does not by itself present circumstances warranting an order to produce a factual return. Given that the Court lacks jurisdiction over the case, counsel would not be able to use a factual return to advance the litigation in this Court. Further, even if a return were to be ordered, it would be unduly burdensome to key any requirement to produce factual returns to a scheduled or desired visit to Guantanamo Bay by counsel. There are a number of cases, involving multiple detainees, in

6

which counsel have requested or are requesting factual returns and in which counsel visits are being or likely will be requested. The logistics of making a factual return and the logistics of arranging counsel visits, where required, involve two separate and unrelated undertakings, and the ability to arrange for a visit does not mean that factual returns pertaining to detainees involved in any particular visit can or should necessarily be completed prior to the visit.

Furthermore, to the extent petitioners' motion asks the Court to require production of information related to petitioner Algahtani's Administrative Review Board ("ARB") proceedings, the motion should also be denied because such proceedings are not properly before this Court, nor are they a proper subject for this litigation. ARB proceedings are separate and distinct from proceedings before the Combatant Status Review Tribunals ("CSRTs") that determine whether detainees are properly classified as enemy combatants. ARB proceedings serve purposes unrelated to the issues raised by the habeas petition before the Court. The habeas petition, and thus any factual return that would be filed in connection with the petition, concerns whether petitioner Algahtani is properly subject to detention by the United States, that is, whether the detainee has been legitimately determined to be an enemy combatant and may therefore be detained for the duration of hostilities, if necessary. By contrast, ARB proceedings are designed to provide annual assessments not of whether a detainee is properly detained as an enemy combatant, but of whether it is in the interests of the United States to transfer or continue to detain an individual who has already been determined to be an enemy combatant in CSRT proceedings. A decision in an ARB proceeding is based on a weighing and balancing of factors such as the threat a detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters and the detainee's continuing intelligence

value. See Revised Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba (July 14, 2006) (available at http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf). As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and exercise of discretion by the Military that is not justiciable.[4] See, e.g., Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Mar. Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement").

In any event, consistent with the directives of the Supreme Court in Steel Co. and Ex parte McCardle, the most the Court should do at this point is conduct proceedings to deal with the jurisdictional issue, i.e., establish a schedule for a motion by respondents and follow-on briefing addressing the issue of the Court's jurisdiction in detail, while staying all other proceedings in this case, including with respect to petitioners' request for a factual return. Respondents' jurisdictional arguments warrant appropriate consideration, and they are in no way immaterial or premature. Alternatively, the Court should await consideration of the jurisdictional issue under the DTA and MCA by the Court of Appeals in the cases pending before it, see supra

---

[4] Accordingly, petitioners' request for information related to ARB proceedings is, in essence, an improper request for discovery. "A habeas petitioner, [however,] unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Harris v. Nelson, 394 U.S. 286, 297 (1969) (discovery in habeas proceedings is not automatic and cannot be "activated on [the petitioner's] own initiative."); cf. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts (codifying Harris v. Nelson by allowing discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise" and requiring submission of the proposed discovery to the court for approval); id. Rule 1(b) (application of § 2254 Rules in non-§ 2254 cases is within court's discretion). In any event, for the reasons discussed in the text, any such discovery would be inappropriate.

note 3, while staying all proceedings in these cases – including with respect to petitioners' request for a factual return.

## CONCLUSION

For the reasons stated above, Petitioners' Motion for an Order to Show Cause should be denied.

Dated:  December 15, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

  /s/ JAMES C. LUH
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN (IN Bar No. 23840-49)
EDWARD WHITE
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4938
Fax:  (202) 616-8460
Attorneys for Respondents

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHALED MALLOUH SHAYE ALGAHTANI, *et al.* ) ) ) Petitioners, ) ) v. ) ) GEORGE W. BUSH, ) President of the United States, ) *et al.*, ) ) Respondents. ) | Civil Action No. 06-CV-1769 (RCL) |

**ORDER DENYING PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE**

It is hereby ordered that Petitioners' Motion for an Order to Show Cause is DENIED.

IT IS SO ORDERED.

Dated: _____

                                                                 _____
                                                                 ROYCE C. LAMBERTH
                                                                 UNITED STATES DISTRICT JUDGE