IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHALED MALLOUH SHAYE ALGAHTANI,) by and through his Next Friend SHABIB ) MALLOUH SHAYE ALGAHTANI, )     Riyadh, Saudi Arabia ) ) *Petitioners,* ) ) v. ) ) GEORGE W. BUSH, DONALD RUMSFELD,) REAR ADM. HARRY B. HARRIS, JR., ) ARMY COL. WADE F. DAVIS, ) ) *Respondents*. ) | No. 1:06-cv-01769 RCL |

**PETITIONER'S REPLY IN SUPPORT OF
HIS MOTION FOR AN ORDER TO SHOW CAUSE**

    Petitioner Khaled Mallouh Shaye Algahtani ("Petitioner"), by and through his next friend, Shabib Mallouh Shaye Algahtani and their counsel, respectfully submit this reply in support of their Motion for an Order to Show Cause.

**INTRODUCTION**

    Petitioner has been without an attorney during the four-plus years of his detention by the United States Government at Guantanamo Bay, Cuba. As stated in Petitioner's opening memorandum, Petitioner requires legal counsel immediately to (i) inform him about the government's alleged legal basis for his detention, and (ii) advise him about his legal options. (Pet. Brf., at 4, 6-9.)

    Petitioner's counsel have made arrangements to meet Petitioner for the first time in Guantanamo Bay, Cuba, on January 24-25, 2007. However, Petitioner cannot meet with his attorneys at all unless the pending motion for protective order is granted. In

- 1 -

addition, review of the factual return is extremely important to the establishment of a meaningful attorney-client relationship. Counsel is mindful of the many demands on the Court's resources. Petitioner's counsel respectfully requests that this Court issue the protective order and order the production of the factual return as soon as the Court's schedule permits in order to permit counsel to begin representing Petitioner in a meaningful way.[1]

With the significant exceptions of the protective order and factual return, Petitioner's counsel have taken all other necessary steps to meet with Petitioner in January 2007.[2] Petitioner's counsel Jeffrey D. Colman has the required security clearance. The Department of Defense has approved counsels' request to visit Petitioner contingent upon issuance of the requested protective order. And Petitioner's counsel have purchased airline tickets and hired a translator to accompany them.

In our opening brief, we explained why immediate production of the factual return is essential to counsels' assessment of Petitioner's legal options and the development of a meaningful attorney-client relationship between counsel and Petitioner. In objecting to Petitioner's motion for the factual return, Respondents do not in any way dispute this central point. More importantly, Respondents identify no authority that denies counsel to Guantanamo detainees. This Court should grant Petitioner's motion for the factual return on these grounds alone. But Respondents' two main arguments in opposition -- that this Court lacks jurisdiction and that producing the factual return would be burdensome -- are meritless.

---

[1] The Motion for Protective Order was fully briefed as of December 4, 2006 (*see* Docket No. 5); the motion for factual returns is fully briefed as of the filing of this Reply.
[2] Petitioner's counsel Matthew R. Devine submitted his application for the required security clearance on October 30, 2006; it remains pending.

## **ARGUMENT**

Respondents contend that this Court should deny Petitioner's motion for the factual return because: (i) this Court lacks jurisdiction over Petitioner's habeas corpus petition (Opp. Brf., at 1-5); and (ii) producing the factual return would unduly burden the government (Opp. Brf., at 5-9). These arguments entirely miss the point, and this Court should reject them for the following reasons:

**I.     Respondents Identify No Authority Denying Counsel To Detainees.**

Respondents first contend that this Court lacks jurisdiction over the Petitioner's habeas petition under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA") and the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"). (Opp. Brf., at 1-5.) The government contends (at 2) that the DTA gives the D.C. Circuit Court exclusive jurisdiction over detainees' habeas petitions.

Significantly, the government fails to address Petitioner's main argument on this point, i.e., that even if the constrained review provided by the DTA was given effect (as the government contends it should be), Petitioner still requires the assistance of counsel to prepare for that review. (Pet. Brf., at 6-8.) Further, there is nothing in the DTA -- and Respondents have pointed to no language to the contrary -- that suggests that the Court of Appeals has exclusive jurisdiction to deal with the production of unredacted factual returns. Contrary to Respondents' contention, Petitioner's motion for a factual return does not threaten the jurisdiction of the Court of Appeals. Even if it is eventually determined that the DTA precludes habeas jurisdiction in this Court -- an issue that is under review in the Court of Appeals and likely will be decided sometime in the next two

years by the Supreme Court -- counsel will still need the factual return to properly advise Petitioner concerning the proceedings to be held under the DTA.  Petitioner, and we as his lawyers, seek basic information relevant to the legal justification for Petitioner's continued detention.  That information will be needed no matter where jurisdiction is ultimately found, and is part and parcel of the Petitioner's established and protected right to be represented by lawyers, to be informed why he is being held in custody, and to prepare his defenses and explanations why he no longer presents a threat to the United States or its allies and should no longer be considered an enemy combatant, and therefore should be released from the Guantanamo Bay prison.

      We realize that this Court desires to stay *substantive* motions in these habeas corpus cases pending anticipated guidance from the Court of Appeals or the Supreme Court regarding the effect of the DTA or MCA.  But this motion for an unredacted factual return does not depend on the resolution of those cases.  Petitioner's desire to obtain the unredacted factual return is not dependent upon resolution of the habeas-DTA issue, but is critical to Petitioner's ability to contest his imprisonment, and our ability to provide Petitioner with proper legal advice and assistance.

### II.     Producing A Factual Return Is Not Burdensome To Respondents.

Respondents argue that producing factual returns is burdensome, and that therefore they should not have to produce them. (Opp. Brf., at 5-8.) While Respondents offer broad-brush allegations about the difficulties in preparing and producing factual returns, they do not offer any information about the difficulty, if any, in providing *this Petitioner* a factual return, which is the only factual return at issue here. The government's conclusory allegations of hardship do not suffice to defeat Petitioner's Motion.

Respondents have had years to evaluate Petitioner's "enemy combatant" status, have already concluded the status hearings, have had numerous occasions to interrogate Petitioner, and are well aware of the factual basis, if any, that allegedly supports his continued detention.[3] Moreover, Petitioner's habeas claims were filed more than 60 days ago -- on October 16, 2006 -- and Petitioner first asked for the factual return on November 30, 2006 -- almost 30 days ago. Respondents have had ample time to prepare the factual return in this matter.

---

[3] Respondents object to the production of materials related to Petitioner's Administrative Review Board ("ARB") hearings on the grounds that those hearings have nothing to do with Petitioner's continued detention. (Opp. Br. at 7-8.) They contend that "ARB proceedings are designed to provide annual assessments not of whether a detainee is properly detained as an enemy combatant, but of whether it is in the interests of the United States to transfer or *continue to detain* an individual who has already been determined to be an enemy combatant in [Combatant Status Review Tribunal] proceedings." (Opp. Br., at 7) (emphasis added). Respondents thereby admit that the ARB proceeding involves determinations affecting Petitioner's liberty, which is the precise issue at stake in Petitioner's habeas petition. Consequently, the ARB proceedings are directly related, by Respondents' own admission, to whether or not the United States's basis for continuing to detain Petitioner is or is not legally valid, and thus to the habeas petition at issue in this matter. Respondents' attempt to deny Petitioner a factual return related to the ARB proceeding should not be credited by this Court.

Further, Respondents have already produced thousands of pages of similar documents, including transcripts from Combatant Status Review Tribunals ("CSRTs") in response to requests under the Freedom of Information Act by the Associated Press. In fact, Respondents have routinely provided factual returns within 30 days under Judge Richard Roberts's orders. *See, e.g., Adem v. Bush*, No. 05-723 (June 6, 2005); *Al Daini v. Bush*, No. 05-634 (June 6, 2005); *El-Banna v. Bush*, No. 05-1144 (Apr. 8, 2005); *Abdullah v. Bush*, No. 05-23 (Apr. 8, 2005); and *Al Rashaidan v. Bush.*, No. 05-586 (Apr. 8, 2005). In *Abdullah*, Respondents submitted the factual return within the precise time limit specified by Petitioner in this case: one week. This shows that Respondents can produce factual returns as quickly as they need to, defeating their own claim that they require 90 days to produce a factual return if this Court decides to require production. (Opp. Brf., at 6.) Respondents have not pointed to a single fact that would delay production of the factual return in this case beyond the week it took to produce them in *Abdullah*, much less attempted to justify a delay of 90 days, which is more than ten times the amount of time it took for Respondents to produce factual returns in *Abdullah*. Further undermining Respondents' request, they fail to even attempt to explain why 90 days is necessary, as opposed to, for instance, two hours or two years. The 90-days number is randomly selected; it should be rejected.

Next, while the government discusses its alleged burdens at length, it entirely ignores the corresponding prejudice to Petitioner of continued delay. Petitioner has been detained without counsel for more than four years. The government chose to detain him; the Petitioner did not choose to be detained. To the extent that any burden results from production of a factual return, the government -- not Petitioner -- should bear it. The

government has significant resources at its disposal across which any burden can be diluted; by contrast, withholding a factual return from the Petitioner denies him a critical tool necessary to evaluate his legal status; the punitive effect falls squarely upon Petitioner, and Petitioner alone.  For the reasons set forth in more detail in the opening memorandum, further delaying production of a factual return impairs Petitioner's ability to avail himself of any and all legal remedies in a timely manner.

Finally, during their trip to Guantanamo, starting on January 21, 2007, counsel for this Petitioner will also visit another detainee client, Jawad Jabbar Sadkhan (*Sadkhan v. Bush, et al.*, Case No. 05-1487).  The Department of Defense has approved counsel's request to meet with Mr. Sadkhan on January 22-23, 2007, and Judge Collyer has issued the protective order and the government has produced the factual return.  Petitioner's counsel Jeffrey D. Colman, who also represents Mr. Sadkhan, intends to visit the secure facility in Crystal City, Virginia, prior to leaving for Guantanamo, for the purpose of reviewing the classified portion of Mr. Sadkhan's factual returns.  Mr. Colman is awaiting a ruling from this Court on Petitioner Algahtani's motion for factual returns before he finalizes his travel to Virginia.  Absent an order requiring speedy production of factual returns in this case, Mr. Colman will be unable to review any classified factual returns related to Petitioner's case during his upcoming trip to Virginia.  While Mr. Colman would be able to visit Petitioner Algahtani in the absence of the factual returns (as long as a protective order is issued), Mr. Colman's visit with Petitioner, and his ability to foster a meaningful attorney-client relationship, will be materially impaired without prior review of the unredacted factual returns for the reasons stated in more detail in Mr. Colman's declaration, attached to Docket No. 6 as Ex. 1.

- 8 -

In short, compliance with Petitioner's motion for the factual return is not the burdensome task Respondents claim it is; in reality, it will involve little or no time or effort. And even if some burden were actually involved, the government chose to assume that burden when it detained Petitioner; any burden is significantly offset by the corresponding prejudice to Petitioner, and his counsel, of further delay.

## CONCLUSION

For the foregoing reasons, and those stated in Petitioner's opening memorandum, this Court should grant Petitioner's motion to require the government to explain in writing within 7 days why they are continuing to detain Petitioner in the Guantanamo Bay detention facility, including but not limited to the unredacted "factual returns" which resulted from hearings regarding Petitioner before the Combatant Status Review Tribunal (CSRT) and the Administrative Review Board (ARB).

Dated: December 26, 2006                Respectfully submitted

  /s/ Jeffrey D. Colman
Jeffrey D. Colman
One of the Attorneys for Petitioners

Jeffrey D. Colman
Illinois Bar No. 491160
Matthew R. Devine
Illinois Bar No. 6282744
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
T: (312) 222-9350
F: (312) 527-0484
Email: jcolman@jenner.com

- 9 -

*Of Counsel*
Barbara Olshanksy (BO3635)
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

Case 1:06-cv-01769-UNA     Document 9     Filed 12/26/2006     Page 9 of 10

**CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing documents to be served by the ECF system upon the following registered participants who have appeared in this matter on this 26th day of December, 2006:

>James C. Luh
>james.luh@usdoj.gov
>
>Terry Marcus Henry
>terry.henry.usdoj.gov

>   /s/ Jeffrey D. Colman_____
>Jeffrey D. Colman
>Illinois Bar No. 491160
>Jenner & Block LLP
>330 North Wabash Avenue
>Chicago, Illinois 60611-7603
>Tel: (312) 222-9350
>Fax: (312) 527-0484
>Email: jcolman@jenner.com